IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| CHRISTIAN SMITH, | : | Case No. 1:24-cv-165 |
| Plaintiff, | : | Judge Matthew W. McFarland |
| v. | : | |
| CHAE HARRIS, et al., | : | |
| Defendants. | : | |

### ORDER AND OPINION

This matter is before the Court on Defendants' Motion for Partial Judgment on the Pleadings (Doc. 20). Plaintiff filed a Response in Opposition (Doc. 21), to which Defendants filed a Reply in Support (Doc. 23). This matter is therefore ripe for the Court's review. For the following reasons, Defendants' Motion for Partial Judgment on the Pleadings (Doc. 20) is **GRANTED.**

### BACKGROUND

Plaintiff Christian Smith was incarcerated at Lebanon Correctional Institution. (Compl., Doc. 1, ¶ 17.) On March 28, 2022, the correctional officer Defendant McKinley placed Dustin Yeager, an inmate who had been in a fight with his previous cellmate, into Plaintiff's cell. (*Id.* at ¶ 20.) Upon entering the cell, Yeager was agitated and paced incessantly. (*Id.* at ¶ 26.) Yeager indicated to Plaintiff that he had been high on methamphetamine for days. (*Id.*) Plaintiff sat quietly and tried to not further agitate Yeager. (*Id.*) About eight minutes after Yeager was placed in Plaintiff's cell, Defendant

Bailey, a nurse employed by the Ohio Department of Correction and Rehabilitation, delivered medication to the cell. (*Id.* at ¶¶ 16, 25.) Neither Defendant Bailey nor the two accompanying correctional officers observed any wounds, blood, or Yeager's "visibly abnormal manner and behavior." (*Id.* at ¶ 25.)

At some point, Yeager removed two improvised knives that he was hiding on his person and began attacking Plaintiff. (Compl., Doc. 1, ¶¶ 27-28.) Yeager falsely accused Plaintiff of killing Yeager's twin brother. (*Id.* at ¶ 29.) Plaintiff yelled out that Yeager was stabbing and trying to kill him. (*Id.* at ¶ 30.) Correctional officers were posted at the end of the hall within earshot. (*Id.*) Plaintiff thought he heard a correctional officer ask who was yelling, which prompted Plaintiff to identify himself. (*Id.*) But, there was no further response or assistance. (*Id.*)

Yeager only stopped stabbing Plaintiff once the shank had dulled, and Plaintiff managed to crawl under the bed. (Compl., Doc. 1, ¶ 31.) Defendant McKinley looked into the cell around 9:30 p.m. and did not notice anything amiss. (*Id.* at ¶ 32.) It was not until after 10:00 p.m. that another correctional officer determined something was wrong and ordered Yeager to remove the blankets and sheets from the floor, which revealed Plaintiff's foot from underneath the bed. (*Id.* at ¶¶ 36-38.) By this point, Plaintiff had suffered approximately thirty-five visible puncture wounds on his head, hands, and torso. (*Id.* at ¶ 35.) Plaintiff ultimately underwent surgery and recovery measures for his serious medical issues. (*Id.* at ¶¶ 40-42, 49.)

Defendant Chae Harris was serving as the Warden of Lebanon Correctional Institution when this incident unfolded. (Compl., Doc. 1, ¶ 12.) Plaintiff alleges that

2

Defendant Harris failed to properly train prison staff on a variety of policies and procedures, including inmate transfer, searches, supervision, and medical care. (*Id.* at ¶¶ 58, 62, 68.) These failures resulted in the harm that Plaintiff suffered at the hands of Yeager. (*Id.* at 70.)

On March 27, 2024, Plaintiff filed suit against Defendants Harris, McKinley, Umstead, and Bailey, as well as John and Jane Doe Defendants. (*See* Compl., Doc. 1.) Plaintiff brings the following claims: (1) Failure to Protect against all Defendants; (2) Deliberate Indifference to a Known Medical Need against all Defendants except Defendant Bailey; (3) Supervisory Liability against Defendant Harris; (4) State Law Negligence against all Defendants; and (5) State Law Negligent Hiring, Training, and Retention against Defendant Harris.

Defendants now move for partial judgment on the pleadings as to (1) all claims against Defendant Bailey, (2) all claims against Defendant Harris, (2) all state law claims, and (4) any claims potentially alleged against any Defendant in their official capacity. (Motion, Doc. 20.) Plaintiff clarifies that he does not bring any claims against any Defendant in their official capacity. (Response, Doc. 21, Pg. ID 127, 132-33.) The Court will proceed to the remaining arguments accordingly.

## LAW AND ANALYSIS

When considering a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), courts follow the same standard as they would for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020). Courts must determine whether the allegations

"plausibly give rise to an entitlement of relief." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). In doing so, courts "accept as true all well-pleaded factual allegations, but they need not accept legal conclusions." *Id.*

"To state a claim under [42 U.S.C.] § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). A defendant cannot be held personally liable under § 1983 merely on a basis of respondeat superior. *See Winkler v. Madison Cty.*, 893 F.3d 877, 898 (6th Cir. 2018). Instead, personal liability attaches only to a defendant's own unconstitutional conduct, so personal involvement is a prerequisite. *See Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012); *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011).

### I. Defendant Bailey

Defendants argue that Plaintiff's failure-to-protect claim against Defendant Bailey should be dismissed. (Motion, Doc. 20, Pg. ID 120-21.) In order to establish a constitutional violation under the failure-to-protect framework, a plaintiff must satisfy both an objective and a subjective prong. *See Zakora v. Chrisman*, 44 F.4th 452, 469-474 (6th Cir. 2022). First, a plaintiff must demonstrate that the failure to protect was objectively "sufficiently serious." *Id.* at 469 (quotation omitted). Second, under the "subjective deliberate-indifference standard, a prison official cannot be found liable under the Eighth Amendment unless the official knows of and disregards an excessive risk to inmate health or safety." *Id.* at 472 (quotation omitted). In other words, a plaintiff must show that "each

4

defendant 'subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk' by failing to take reasonable measures to abate it." *Griffith v. Franklin Cnty., Kentucky*, 975 F.3d 554, 566 (6th Cir. 2020) (quoting *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018)). This high standard of culpability is "equivalent to criminal recklessness." *Rhinehart*, 894 F.3d at 738 (quotation omitted).

Defendants contend that Plaintiff's failure-to-protect claim against Defendant Bailey fails under the subjective prong of deliberate indifference. (Motion, Doc. 20, Pg. ID 120-21.) Plaintiff responds that Defendant Bailey must have been deliberately indifferent to the foreseeable harm towards Plaintiff by failing to notice and act upon Yeager's bizarre conduct. (Response, Doc. 21, Pg. ID 134.)

Turning to the Complaint, Plaintiff alleges that Yeager's mental state was alarming because he displayed extreme and bizarre conduct. (Compl., Doc. 1, ¶ 56.) Upon entering the cell, Yeager was agitated and paced incessantly. (*Id.* at ¶ 26.) Yeager indicated to Plaintiff that he had been high on methamphetamine for days. (*Id.*) Recognizing this situation, Plaintiff tried to not further agitate Yeager. (*Id.*) Approximately eight minutes later, Defendant Bailey delivered medication to the cell. (*Id.* at ¶ 25.) But, Defendant Bailey did not "observe" any blood, wounds, or Yeager's "visibly abnormal manner and behavior." (*Id.* at ¶¶ 25, 56.)

The Complaint fails to plausibly state that Defendant Bailey acted with deliberate indifference by "know[ing] of and disregard[ing] an excessive risk to [Plaintiff's] health or safety." *Zakora*, 44 F.4th at 472 (quotation omitted). While Plaintiff alleges that

5

Defendant Bailey visited his cell to dispense medication, he explicitly alleges that Defendant Bailey did not observe wounds, blood, or Yeager's "visibly abnormal manner and behavior." (Compl., Doc. 1, ¶ 25.) Thus, Plaintiff has not made allegations that, taken as true, "would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner [and] that [the official] did in fact draw the inference." *Burwell v. City of Lansing, Michigan*, 7 F.4th 456, 466 (6th Cir. 2021).

Plaintiff, to be sure, emphasizes that Yeager's conduct was obviously concerning and bizarre. (Response, Doc. 21, Pg. ID 134-35.) But, Supreme Court precedent clarifies that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment" sufficient to demonstrate deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). In other words, a prison official unaware of a substantial risk of harm is not liable under the Eighth Amendment, "even if the risk was obvious and a reasonable prison official would have noticed it." *Bishop v. Hackel*, 636 F.3d 757, 767 (6th Cir. 2011); *see also Schoonover v. Rogers*, No. 1:18-CV-302, 2021 WL 4479354, at *10 (S.D. Ohio Sept. 30, 2021), *aff'd*, No. 21-3970, 2022 WL 12258998 (6th Cir. Oct. 21, 2022) (cleaned up) (explaining that "even potentially negligent cavalier treatment of detainees . . . does not establish deliberate indifference absent evidence that [the official] perceived the serious risk"). Here, the Complaint makes clear that Defendant Bailey neither "observed" nor "noted" Yeager's abnormal behavior. (Compl., Doc. 1, ¶¶ 25, 56.)

The remaining allegations in the Complaint do not alter this conclusion. First, Plaintiff points out that Yeager had recently been removed from his previous cell due to

6

fighting. (Response, Doc. 21, Pg. ID 134.) While the Complaint does allege this fact (Compl., Doc. 1, ¶ 20), it does not allege that Defendant Bailey had any involvement in the transfer or knew of Yeager's background at the time. Second, turning to Plaintiff's yells for help once the attack began, the Complaint stops short of alleging a connection to Defendant Bailey. (Compl., Doc. 1, ¶ 30.) Although the Complaint notes that correctional officers were positioned within earshot and that one correctional officer responded (*Id.*), there are no factual allegations that Defendant Bailey—a nurse—heard Plaintiff's cries for help. These considerations are noteworthy because "each official's liability must be based solely on that official's own knowledge," and courts must "consider the subjective [failure-to-protect] prong for each defendant separately." *Zakora*, 44 F.4th at 472.

For all these reasons, the Complaint does not sufficiently plead that Defendant Bailey acted with deliberate indifference. The failure-to-protect claim against Defendant Bailey is therefore dismissed.

## II. Defendant Harris

Defendants next argue that the Complaint falls short of sufficiently stating claims against Defendant Harris, the Warden of Lebanon Correctional Institution, in his personal capacity. (Motion, Doc. 20, Pg. ID 119-20.) To hold a supervisory official personally liable, a plaintiff "must show that [he] at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

Here, Plaintiff alleges that Harris failed to properly train prison staff on a variety of policies and procedures, including inmate transfers, searches, supervision, and

medical care. (Compl., Doc. 1, ¶¶ 58, 62, 68.) As Defendants point out, however, Plaintiff does not allege facts from which the Court can plausibly infer that Defendant Harris directly participated in, implicitly approved, or knowingly acquiesced in any constitutional violation. *See, e.g., Hollis v. Erdos*, 480 F. Supp.3d 823, 834 (S.D. Ohio May 12, 2020) (concluding that the complaint failed to plausibly allege that the Warden had implicitly approved, authorized, or acquiesced in the unconstitutional conduct); *Hamilton v. Ross Corr. Inst.*, No. 2:22-CV-1872, 2023 WL 2706229, at *2 (S.D. Ohio Mar. 30, 2023) (similar).

Without sufficient allegations of personal involvement, Plaintiff's claims against Defendant Harris in his personal capacity must fail. *See Bellamy*, 729 F.2d at 421. As the Sixth Circuit has explained, "[t]here must be some conduct on the supervisor's part to which a plaintiff can point that is directly correlated with the plaintiff's injury." *Essex v. Cty. of Livingston*, 518 F. App'x 351, 357 (6th Cir. 2013). A supervisor cannot be held liable within the § 1983 context for "a mere failure to act" or "simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2018).

Moreover, the attempt to hold Defendant Harris personally liable for his alleged failure to adequately train employees "improperly conflates a § 1983 claim of individual supervisory liability with one of municipal liability." *Harvey v. Campbell Cnty., Tenn.*, 453 F. App'x 557, 563 (6th Cir. 2011). As Plaintiff seeks only to hold Defendant Harris personally liable (Response, Doc. 21, Pg. ID 127, 132-33), a *Monell* claim for municipal liability is not a viable vehicle. *See, e.g., Keran v. Smith*, No. 2:21-CV-1943, 2022 WL 99799,

at *3 (S.D. Ohio Jan. 11, 2022). In the absence of a supervisor's personal involvement, a failure-to-train claim cannot lead to personal liability. *See Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 646-48 (6th Cir. 2012); *Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 543-44 (6th Cir. 2008). For all these reasons, the Court dismisses the federal claims against Defendant Harris.

### III. State Law Claims

Defendants lastly argue that Plaintiff's state law claims for negligence should be dismissed because the Court lacks subject matter jurisdiction over them. (Motion, Doc. 20, Pg. ID 124-125.) Federal courts lack pendent jurisdiction over Ohio law claims against state employees in their individual capacity until the Ohio Court of Claims determines that the employees are not immune. *Haynes v. Marshall*, 887 F.2d 700, 705 (6th Cir. 1989) (citing Ohio Rev. Code § 2743.02(F)); *see also McCormick v. Miami Univ.*, 693 F.3d 654, 664-65 (6th Cir. 2012). Plaintiff only brings claims against Defendants in their individual capacities and does not contest dismissal of these state law claims without prejudice. (Response, Doc. 21, Pg. 135.) The Court accordingly dismisses Plaintiff's state law claims without prejudice.

### CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Judgment on the Pleadings (Doc. 20) is **GRANTED.**

1. Plaintiff's First Claim for Failure to Protect is **DISMISSED as to Defendant Bailey;**

2. Plaintiff's First Claim for Failure to Protect, Second Claim for Deliberate Indifference to a Known Medical Need, and Third Claim for Supervisory Liability are **DISMISSED as to Defendant Harris**;

3. Plaintiff's Fourth and Fifth Claims for Negligence under Ohio law are **DISMISSED WITHOUT PREJUDICE as to all Defendants**; and

4. It is hereby clarified that Plaintiff has not asserted any claims against Defendants in their official capacities.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND